UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JOHNNY DUANE CULLEY | Civ. No. 3:11-CV-01498-AC |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security | |
| Defendant. | |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Johnny Duane Culley ("Culley") brings this action under the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Title II and Title XVI disability benefits. The Commissioner concedes reversible error and moves the court to remand for additional administrative proceedings. Culley opposes additional proceedings and urges the court to reverse and remand for an award of benefits. Culley also argues that the ALJ *de facto* reopened

his prior disability application and that the award of benefits should be based on an onset date of December 1, 2005, not September 12, 2007 as alleged in the application at issue here.

For the reasons below, the Commissioner's motion to remand for additional proceedings should be denied. This case should be reversed and remanded pursuant to sentence four of 42 U.S.C. §405(g) for calculation and award of benefits. The ALJ did not *de facto* reopen Culley's prior application. Accordingly, the award of benefits should be calculated based on the onset date of September 12, 2007.

*Background*

Culley was born in 1968 and has a high school education. (Tr. 177, 187.) Culley's primary work was in the motion picture industry as a set decorator and a property custodian, handling various props. (Tr. 49-50.) He also worked as a sales clerk and, most recently, as a babysitter for his niece and nephew in 2004. (Tr. 50-51, 189.) Culley was diagnosed as HIV positive in January of 2005. (Tr. 262.) Culley subsequently sought treatment at the Multnomah County Health Department HIV Clinic, where Family Nurse Practitioner Maria Kosmetatos ("FNP Kosmetatos") examined Culley for the first time in February of 2005. (Tr. 262.) Over the next four and a half years, Kosmetatos, along with Margaret Retondo, M.D. ("Dr. Retondo"), and numerous other nurses and other medical professionals at the Multnomah County Health Department, treated Culley for his various ailments. (Tr. 253-279, 381-536.) Culley also sought treatment for depression and anxiety from Psychiatric and Mental Health Nurse Practitioner Anna Anderson ("PMHNP Anderson") starting in March 2008. (Tr. 538.)

Culley first applied for disability benefits on January 25, 2006, alleging disability since December 1, 2005 from HIV and epilepsy. (Tr. 111, 161.) Culley's initial claim was denied in April of 2006; he did not appeal. (Tr. 60-64.) Culley re-applied for disability benefits and

supplemental security income in September of 2007, alleging disability from HIV, epilepsy, anxiety, and herpes, and an onset date of September 12, 2007. (Tr. 182.) After a hearing on January 12, 2010, the ALJ notified Culley on January 29, 2010 that his claim was denied. (Tr. 18, 28.) On October 28, 2011, the Appeals Council received additional evidence into the record, but denied Culley's request for review of the ALJ's decision. (Tr. 1, 5.) Accordingly, the ALJ's decision is the Commissioner's final decision that is now before the court on Culley's appeal.

*Standards*

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 1382c(a)(3)(A) (2012). The ALJ engages in a five-step sequential process to determine whether a person is disabled under the Act. 20 C.F.R. §§ 404.1520, 416.920 (2013). Each step is potentially dispositive. At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant is not disabled; if not, the analysis moves to step two. 20 C.F.R §§ 404.1520(b), 416.920(b) (2013). At step two, the ALJ determines whether the claimant has one or more severe impairments. If not, the claimant is not disabled; if so, the analysis continues. 20 C.F.R §§ 404.1520(c), 416.920(c) (2013). At step three, the ALJ determines whether the claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R Part 404, Subpart P, Appendix 1. If so, the claimant is disabled. If the claimant's impairment does not meet or equal one listed in the regulations, the analysis moves to step four. 20 CFR §§ 404.1520(d), 416.920(d) (2013).

If adjudication proceeds beyond step three, the ALJ must first evaluate the medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The RFC is an assessment of work-related activities the claimant may still perform on a sustained basis, despite the claimant's impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e) (2013); *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996); SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). Assessing a claimant's credibility regarding his or her symptoms and their functional effect is part of the RFC determination when the record establishes the existence of a medically determinable impairment that could reasonably give rise to the claimant's reported symptoms. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The ALJ uses this information to determine whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2013). If the claimant cannot perform his or her past relevant work, the analysis moves to step five where the ALJ determines whether the claimant is able to do any other work in the national economy, considering the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g) (2013).

The burden to show disability rests with the claimant at steps one through four, but if the analysis reaches step five, the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant could perform. *Tackett v. Apfel*, 180 F.3d 1094, 1098-1100 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part. 404, Subpart. P, Appendix. 2. *Id.* at 1101. If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can perform, then the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 CFR §§ 404.1520(g)(1), 416.920(g)(1) (2013).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g) (2012); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the decision. *Andrews*, 53 F.3d at 1039-40. A reviewing court must consider the entire record as a whole and cannot affirm the Commissioner by simply isolating a specific quantum of supporting evidence. *Robbins*, 466 F.3d at 882.

### *The ALJ's Findings*

The ALJ first established that Culley maintained disability insurance coverage until December 31, 2007. (Tr. 20.) At step one, the ALJ found that Culley had not engaged in substantial gainful activity since the alleged onset date of September 12, 2007. (Tr. 20.) At step two, the ALJ determined Culley suffered from severe impairments in the form of an unreduced inguinal hernia, depression, and anxiety. (Tr. 20-21.) The ALJ found Culley's HIV, chronic testicular hypogonadism, seizure disorder, and herpes not severe because they were well-controlled with medication and "relatively asymptomatic." (Tr. 20-21.) At step three, the ALJ found that Culley did not have an impairment or combination of impairments that met or equaled the listed impairments in the SSA regulations. (Tr. 22.)

Since Culley did not establish a disability at step three, the ALJ assessed his RFC. (Tr. 22-23.) The ALJ determined Culley could perform light exertional work, defined in 20 C.F.R.

404.1567(b) and 416.967(b) as lifting no more than twenty pounds occasionally and mostly standing and walking, or sitting while operating arm or leg controls, except Culley was limited to only occasional interaction with co-workers and the general public. (Tr. 23.) Culley's testimony regarding his symptoms was not credible because, the ALJ reasoned, it was only partially supported by the medical record and his daily activities were inconsistent with his alleged limitations. (Tr. 23-26.) The ALJ also discounted a medical opinion letter co-signed by Dr. Retondo and FNP Kosmetatos, and a letter from PMHNP Anderson because, according to the ALJ, the letters were not provided by "acceptable medical sources." Since the letters were not sufficiently supported by clinical notes or diagnostic testing, the ALJ ruled they were not entitled to significant weight. (Tr. 26.) The ALJ also discounted a 2006 report from Terri Robinson, M.D. ("Dr. Robinson") because Dr. Robinson "spent only 25 minutes examining the claimant and did not appear to have considered whether or not he was giving his honest, best effort." (Tr. 26.)

At step four, the ALJ found that Culley could not perform his past relevant work. (Tr. 27.) At step five, the ALJ elicited testimony from a vocational expert that a person with Cully's age, education, work experience, and RFC could work as a small products assembler, mail clerk, or office helper, and those jobs existed in significant numbers in the national economy. (Tr. 27-28.) Accordingly, the ALJ concluded Culley was not disabled under the Act and denied both his claim for disability benefits and supplemental security income. (Tr. 28.)

*Discussion*

Culley argues that the ALJ failed to give sufficient reasons to reject the opinions of multiple treatment providers, a medical examiner, and his own subjective testimony. Specifically, Culley asserts the ALJ improperly weighed the 2009 opinion letter jointly signed by

Dr. Retondo and FNP Kosmetatos ("Retondo letter"), the 2009 letter from PMHNP Anderson, and the April 2006 examination report from Dr. Robinson. Since the ALJ failed to provide a sufficient legal basis for rejecting that evidence, Culley argues, a remand for an immediate award of benefits is required. Culley further contends that by considering evidence from his first disability application, the ALJ *de facto* reopened the prior claim and thus benefits should be awarded based on the previously alleged onset date of December 1, 2005.

The Commissioner concedes that the ALJ erred in evaluating the Retondo letter and the Robinson report; the Commissioner does not concede error in any other aspect of the ALJ's decision. The Commissioner argues that even after crediting the Retondo letter and Robinson report as true, there are outstanding issues that must be resolved and thus the court should remand to the ALJ for further adjudication. The Commissioner also contends that the ALJ did not reopen Culley's prior application.

I. Proper Remand

Both parties agree that remand is required. The first question then is whether to remand for additional proceedings or an award of benefits, a decision that is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1177-78 (9th Cir. 2000). Where the record is fully developed and further proceedings would serve no useful purpose, remand for an award of benefits is appropriate. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (citing *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). No matter how egregious the error by the ALJ, the court cannot award benefits punitively. *Id.* The reviewing court must examine whether the claimant is disabled within the meaning of the statute, including an analysis of whether evidence improperly excluded by the ALJ should be credited as true. *Id.* Such evidence is credited as true and an immediate award of benefits is required where (1) the ALJ

failed to provide legally sufficient reasons for rejecting the disputed evidence; (2) there are no outstanding issues that must be resolved before a disability determination can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if the disputed evidence was credited. *Harman*, 211 F.3d at 1178 (citing *Smolen*, 80 F.3d at 1292). If the so-called *Smolen* test is satisfied regarding improperly rejected medical evidence, then remand for payment of benefits is warranted "regardless of whether the ALJ *might* have articulated a justification for rejecting the medical opinion." *Id.* at 1179.

The initial inquiry is whether the errors conceded by the Commissioner compel a finding of disability and an award of benefits. If not, the court will then examine the other alleged errors. As stated above, the Commissioner concedes that the ALJ improperly rejected the Retondo letter. (Def. Br. at 6.) The Retondo letter stated that Culley had been under the care of Dr. Retondo and FNP Kosmetatos for five years and was diagnosed with chronic HIV disease with resulting weakness and fatigue; hypogonadism; chronic depression and anxiety; and gastritis. (Tr. 537.) As a result of these diagnoses, Culley suffered from "markedly reduce[d] . . . stamina" and "decreased activity tolerance." (Tr. 537.) He required frequent rest periods during the day, and had significant trouble managing his daily activities. (Tr. 537.) According to the Retondo letter, Culley's depression and anxiety were "uncontrolled," he suffered from decreased motivation and concentration, and he experienced great difficulties in social situations. (Tr. 537.) Dr. Retondo and FNP Kosmetatos opined it was "likely that [Culley] would miss more than two days a month from work due to his fatigue, anxiety, depression, poor stamina, and poor social functioning." (Tr. 537.)

The ALJ mischaracterized the Retondo letter as from FNP Kosmetatos alone, and thus as an "other source" opinion not afforded the same weight as that of an "acceptable medical

source." (Tr. 26.) The Commissioner concedes the ALJ should have considered the Retondo letter as an acceptable medical source, and as a result did not adequately weigh the evidence. (Def. Br. at 7.) Therefore, the first element of the *Smolen* test is satisfied.

The next question is whether there are any outstanding issues to be resolved before a disability determination can be made. The Commissioner asserts there are outstanding issues, such as whether the ALJ could have properly discredited the Retondo letter by pointing to inconsistencies in the record regarding Culley's depression or his daily activities. The Commissioner's attempt to circumvent *Smolen* by arguing on what basis the ALJ could have properly discredited the Retondo letter is not well founded. The court must constrain its review of the ALJ's decision to the reasoning contained therein. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001)). The Commissioner "cannot provide cover for an ALJ's erroneous finding" by offering additional reasons to reject the Retondo letter. *Walker v. Astrue*, No. 09-1291-AC, 2011 WL 2934872, at *11 (D. Or. June 17, 2011). Ninth Circuit law requires a remand for an award of benefits if the *Smolen* test is satisfied, without regard for the Commissioner's assertion that the ALJ *might* have articulated proper reasons for rejecting the Retondo letter. *Harman*, 211 F.3d at 1179.

Furthermore, the question of whether there are "outstanding issues to be resolved" is better stated as whether the five-step disability analysis was properly completed in light of the ALJ's error. *See Vasquez v. Astrue*, 572 F.3d 586, 597 (9th Cir. 2008). The Ninth Circuit in *Vasquez* remanded for further proceedings because the record did not include facts supporting the proper outcome of step four or five of the disability determination. *Id.* "Where the testimony of the vocational expert has failed to address a claimant's limitations as established by

improperly discredited evidence," the court reasoned, "this Circuit has consistently remanded for further proceedings rather than payment of benefits." *Id*. (citing *Harman*, 211 F.3d at 1178-79) (quotation marks omitted).

Unlike *Vasquez*, the record in the present case does support a disability determination if the Retondo letter is credited as true. At Culley's 2010 hearing, the ALJ posited a hypothetical to the vocational expert based on his findings regarding Culley's RFC. (Tr. 51-52.) The VE testified that while such a person could not perform Culley's previous work, there were jobs in the national economy, such as small products assembly, mail clerk, and office helper, that a person with Culley's RFC could perform. (Tr. 52.) Because those jobs existed in sufficient numbers, the ALJ determined Culley was not disabled at step five. (Tr. 28.) The ALJ, however, also asked the VE a different hypothetical in which the person had the identical RFC but would miss work twice a month, as the Retondo letter asserted was true for Culley. (Tr. 52.) The VE testified that a person who missed work twice a month would not be able to sustain competitive employment. (Tr. 52-53.) Thus, if the Retondo letter is credited as true, there are no outstanding issues to be resolved because the VE addressed the limitations set forth in the letter and stated that such a person could not work.

The present case is very similar to *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007), where the ALJ provided two hypotheticals to the VE: one based solely on the ALJ's RFC assessment of the claimant, and one that incorporated the claimant's pain and physical limitation testimony. *Id*. at 1041. Although the ALJ later discredited the claimant's testimony that he needed to lie down for up to forty-five minutes, two or three times a day, the VE testified that if such testimony were true, that employee could not maintain employment. *Id*. The court held that further proceedings were unnecessary and remanded for an award of benefits. *Id*. *See also*

*Tomlin v. Astrue*, No. 3:12–CV–00054–RE, 2012 WL 6102900, at *4 (D. Or. Dec. 7, 2012) (remanding for an award of benefits where the VE "testified that, if the [medical] opinions are credited, and [the claimant] would miss more than two days of work a month, she would be unable to maintain employment."). Similarly here, the VE has already testified that a person with the limitations set forth in the Retondo letter could not maintain competitive employment. Accordingly, there are no other issues that must be resolved before a disability determination is made, and it is clear from the record that if the Retondo letter is credited as true, the ALJ would have to award benefits. Thus the second and third prongs of the *Smolen* test are satisfied, and remand for payment of benefits is warranted. Since crediting the Retondo letter as true requires a remand for an award of benefits, the court need not examine Culley's other claims of error regarding his subjective testimony or other medical evidence.

II. *De Facto* Reopening

The next matter is to determine the proper onset date for the calculation of benefits. Culley's second application for disability benefits, the subject of this dispute, alleges an onset date of September 12, 2007. Culley argues, however, that the ALJ *de facto* reopened his January 2006 disability application when the ALJ considered medical opinion evidence from Dr. Robinson predating the September 2007 date. As a result, Culley argues, he is entitled to benefits back to December 1, 2005, the alleged onset date from his previously denied 2006 claim.

The doctrine of *res judicata* applies to administrative decisions, though it is applied less rigidly to administrative proceedings than to judicial proceedings. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988); *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995). Ordinarily, "when a claimant reapplies for disability benefits after an earlier denial, that earlier denial precludes the

claimant from arguing that he was disabled during the period covered by the earlier decision." *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). As a general matter, the Commissioner's decision to not reopen a prior disability application is not subject to judicial review. *Lester*, 81 F.3d at 827 (citation omitted). One exception to that rule is that an ALJ can *de facto* reopen a prior application by considering "on the merits" whether the claimant was disabled during an already-adjudicated period. *Lewis v. Apfel*, 236 F.3d 503, 510 (9th Cir. 2001) (citing *Lester*, 81 F.3d at 827 n.3).

The plaintiff in *Lewis* first applied for disability benefits in 1991 and was denied without an administrative hearing. *Id.* at 508. He re-applied in September 1992, claiming an onset date of September 15, 1990. *Id.* After a hearing in 1994, the ALJ again denied the claim and Lewis appealed to the district court. *Id.* The magistrate judge concluded *sua sponte* that the 1991 application had *res judicata* effect on the issue of disability through June 1991. *Id.* The Ninth Circuit reversed, holding that the ALJ *de facto* reopened Lewis's prior application because the ALJ "knew of the June 1991 denial of Lewis's 1991 application. Yet he considered evidence of disability from as early as 1989, and he accepted without comment the alleged onset date of September 15, 1990." *Id.* at 510. The ALJ in the present case, unlike in *Lewis*, explicitly declared the relevant onset date for Culley's 2007 application was September 12, 2007, and stated that Culley was not disabled between September 12, 2007 and the date of the decision in January 2010. (Tr. 18, 28.)

The fact that Culley's applications have distinct onset dates weighs against finding a *de facto* reopening. Culley's January 2006 application alleged a disability onset date of December 1, 2005, while the 2007 application alleged September 12, 2007. (Tr. 111, 119.) Courts finding a *de facto* reopening have pointed to identical onset dates in both applications as a key fact. *See,*

*e.g.*, *Rodriguez v. Astrue*, No. C12-0694-TSZ-MAT, 2012 WL 6917605, at *11 (W.D. Wash. Dec. 27, 2012); *Davis v. Astrue*, No. 11-CV-5040-RBL-JRC, 2012 WL 724765, at *7 (W.D. Wash. Jan. 10, 2012); *Pitman v. Barnhart*, CV-02-254-ST, at 2 n.1 (D. Or. filed Jan. 6, 2003). Where the alleged onset date on both applications is the same, it is quite clear how the ALJ reviewing the latter application has actually considered "on the merits" the prior application—the disability analysis covers the identical period. When the ALJ completes the five-step sequential process for the second application, the ALJ is actually re-examining "on the merits" whether the claimant was disabled at the first application. Culley's case does not present those facts.

Furthermore, the court is not convinced that the ALJ's brief mention of Dr. Robinson's 2006 examination report is a determination "on the merits" whether Culley was disabled during the prior period. Although the Ninth Circuit has yet to issue a published opinion directly on point, several unpublished dispositions have rejected similar arguments for *de facto* reopening based solely on the ALJ's review of evidence relevant to a prior application. *See Petersen v. Barnhart*, 213 Fed.Appx. 600, 605 (9th Cir. 2006) (ALJ's examination of medical evidence from before the claimant's onset date is not a determination on "on the merits"); *Moore v. Chater*, No. 95-35764, 1996 WL 498916, at *1 (9th Cir. Aug. 30, 1996) ("Review of the medical history does not amount to *de facto* reopening of the prior decision.").

District courts in this circuit have also rejected the argument that an ALJ's brief review of the claimant's medical history from the prior application period should serve as a *de facto* reopening. *See, e.g.*, *Reyes v. Comm'r of Soc. Sec.*, No. C 10-04571 JSW, 2012 WL 1094337, at *5-6 (N.D. Cal. Mar. 29, 2012); *Van v. Astrue*, Civil No. 07-6042-HA, 2008 WL 4482374, at *7 (D. Or. Sept. 30, 2008). The plaintiff in *Reyes* first filed an application for Social Security disability benefits on February 25, 2005 and alleged an onset date of May 30, 2002. *Reyes*, 2012

WL 1094337 at *3. She filed a second application on October 30, 2008 alleging an onset date of June 14, 2005. *Id.* After the Commissioner denied her 2008 application, she appealed to the district court and argued, *inter alia*, that the ALJ *de facto* reopened her initial claim during the hearing on the second application when the ALJ considered medical evidence that dated back to 2002. *Id.* at *5. The court held that the ALJ's brief consideration of medical evidence prior to the second onset date was not sufficient to *de facto* reopen the first application, in part because the ALJ did not make any reference at all to the prior onset date. *Id.* at *6. Moreover, the ALJ appeared to have reviewed the earlier evidence as part of a cumulative medical history, not as full consideration of Reyes's earlier application on the merits. *Id.* The court in *Van* held that the ALJ's brief mention of the plaintiff's medical history relevant to a prior application was to give context to the period following the previous application for benefits, not to determine on the merits whether the plaintiff was in fact disabled since the previously alleged onset date. *Van*, 2008 WL 4482374, at *7.

Similarly here, the ALJ's consideration of Dr. Robinson's 2006 report appears in context to be a review of Culley's pertinent medical history. (Tr. 26.) Two medical consultants hired by the SSA to evaluate Culley's second application relied heavily on Dr. Robinson's 2006 report. (Tr. 26.) It was reasonable for the ALJ to consider the basis of the consultants' reports both to understand Culley's medical history and to determine whether Culley's condition had changed sufficiently since Dr. Robinson's 2006 report to justify a finding of disability in 2010. At no time did the ALJ mention Culley's prior application or earlier onset date. The ALJ's findings were restricted to the period between September 12, 2007 and his January 2010 decision. Other than the mention of Dr. Robinson's 2006 report, there are no facts to suggest the ALJ considered

"on the merits" whether Culley was disabled going back to December 2005. Accordingly, the court finds September 12, 2007 to be the relevant date for the calculation of benefits.

## *Conclusion*

For the reasons stated above, this case should be reversed and remanded pursuant to sentence four of 42 U.S.C. §405(g) for an award of benefits, calculated from Culley's alleged onset date of September 12, 2007.

## *Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due April 17, 2013. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.
 If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever is earlier, the Findings and Recommendation will go under advisement.
 DATED this 2 day of April, 2013.

                                                 /s/ John V. Acosta
                                                 JOHN V. ACOSTA
                                       United States Magistrate Judge